# AFFIDAVIT

## INTRODUCTION

I am a Task Force Officer (TFO) for the Federal Bureau of
Investigation (FBI), United States Department of Justice (DOJ), and
am currently assigned to the Scranton Resident Agency, Philadelphia
Field Division.  I am an "investigative or law enforcement officer"
within the meaning of Title 18, United States Code (USC), § 2510(7),
that is, an officer of the United States who is empowered by law to
conduct investigations of and to make arrests for offenses enumerated
in 18 USC § 2516(1).

1. I have been employed as a Scranton Police officer for
approximately 19 years and I have been a TFO with the FBI, Scranton
Resident Agency, since 2019.  During my law enforcement career, I
have been involved in numerous criminal investigations and have
participated in numerous drug trafficking investigations. In the course
of those investigations, I have conducted consensually monitored
telephone calls, and was the affiant for numerous search warrants,
conducted surveillance, made arrests and secured relevant information
using other investigative techniques. In many of the investigations in

which I have participated I have acted as the lead investigative investigator.

2. The facts in this application come from my personal observations, my training and experience, and information obtained from other agents, officers and witnesses. This application is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all my knowledge about this matter.

3. Except where otherwise noted, the information set forth in this application has been provided to me by Special Agents/Task Force Officers of the FBI or other law enforcement officers. Unless otherwise noted, wherever in this application I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed. Since this application is being submitted for the limited purpose of securing a search and seizure warrant, I have not included each and every fact known to me concerning this investigation, but have set forth only those facts relevant and necessary to establish probable cause to believe that

Christine Dicarlo, Amanda Correa, Dylan Small, and Shaqare Blackwell; who are engaged in the following federal criminal offenses: (a) 21 USC § 841(b)(1)(c) Drug Distribution Resulting in Death;   (b) violations of 18 USC § 2314 relating to Interstate Transportation of Stolen Property;  (c) violations of 18 USC §924(c) relating to Possession of a Firearm in Furtherance of a Drug or Violent Felony; and (d) violations of 18 USC §922(g) relating to Felon in Possession of Firearms. Furthermore, it is anticipated that the execution of a search warrant will reveal evidence that the items identified in Attachment "B" will be found within the target location listed in Attachment "A" and that said items constitute property which is evidence of the commission of a criminal offense; or contraband, the fruits of crime, or things otherwise criminally possessed; or property designed or intended for use or which has been used as the means of committing a criminal offense.

4. Based on my training and experience and the facts as set forth in this application, there is probable cause to believe that violations of 21 USC § 841(b)(1)(c), 18 USC § 2314, 18 USC §924(c), and violations of 18 USC §922(g) have been committed by Christine Dicarlo, Amanda

Correa, Dylan Small, Robert Barnes and Shaqare Blackwell . There is also probable cause to search the location described in Attachment A for evidence, fruits, or instrumentalities of these crimes, as described in Attachment B.

5. Christine Dicarlo, Amanda Correa, Dylan Small, and Shaqare Blackwell have and are continuing to engage in the distribution of fentanyl.

6. The facts and circumstances of this investigation as set forth below show that there is probable cause to believe Christine Dicarlo, Amanda Correa, Dylan Small, and Shaqare Blackwell committed, is committing, and is conspiring to commit offenses (hereinafter referred to as "Specified Federal Offenses") involving: (a) 21 USC § 841(b)(1)(c) Drug Distribution Resulting in Death;   (b) violations of 18 USC § 2314 relating to Interstate Transportation of Stolen Property;  (c) violations of 18 USC §924(c) relating to Possession of a Firearm in Furtherance of a Drug or Violent Felony; and (d) violations of 18 USC §922(g) relating to Felon in Possession of Firearms.

## PROBABLE CAUSE

9.  On April 18, 2024, at 11:58 A.M. [PM-MP] members from the Scranton Police Department (SPD) were dispatched to the 1746 Clearview Street, Scranton, Pennsylvania for a reported home invasion robbery.  The 911 caller reported that they witnessed a female running from the residence carrying two bags and dressed only in her bra.  She then reported seeing a vehicle parked near the residence that was occupied. The individuals in the vehicle exited the parked vehicle and ran inside 1746 Clearview Street.  A second witness at the scene reported similar information regarding a female in her bra running from the home screaming.  This witness then stated a light gray sedan pulled in front of the home and the occupants exited the vehicle and ran inside 1746 Clearview Street.  The four occupants of the vehicle were described as white female (back seat passenger), white male (Driver), black female (back passenger), and black male (front seat passenger).  The vehicle was also described to display an out of state license plate.

10. As the responding units arrived, they were directed to 1746 Clearview Street by the witnesses.  Patrol units made contact with the

resident who initially reported being robbed by four unknown actors matching the description of the individuals witnessed in the sedan.

11. The victim's home was in disarray with items in the living room smashed and broken. There was blood on the floor and walls of the living room. The victim's head was bleeding from a large laceration on the top of his head. The victim's injuries required medical treatment at Geisinger Community Medical Center. The injury required seven staples to close the wound.

12. SPD investigators responded to the scene and were briefed by the patrol units. The victim initially reported having no knowledge of the actors or their identities. Investigators spoke to the victim and noticed there wasn't evidence of a forced entry and the ring doorbell camera on his door frame. The victim admitted to investigators that he made an arrangement with a prostitute to visit him at his residence. When the prostitute arrived, she was with a second female, described as a short black female.

13. As this investigation was taking place, a second investigation was being handled by a Scranton Police Patrolman in South Scranton.

This second investigation involved individuals in a light grey sedan bearing Massachusetts registration 5MGC99. The individuals were involved in a theft and access device fraud from an earlier incident in the day. Approximately 15 minutes after the robbery occurred and the suspects fled, the sedan was stopped at the Econo Lodge Hotel. At the time of the stop, the vehicle was occupied by four parties, matching the descriptions of the actors in the robbery. During the Patrolman's traffic stop, the four occupants of the vehicle were identified and arrested. Investigators obtained a search warrant from a Pennsylvania Magistrate Judge for the vehicle. During the search, investigators seized two firearms from the vehicle.

14. The four suspects were transported to SPD headquarters for processing. At headquarters, investigators determined the individuals arrested during the traffic stop were the individuals responsible for the robbery that occurred at 1746 Clearview Street. The individuals were identified as Christine Dicarlo, Amanda Correa, Dylan Small and Robert Barnes. According to state authorities and NCIC reports, Robert Barnes has been convicted in Pennsylvania for a felony robbery out of Scranton in 2018.

15. At SPD headquarters, investigators met with Correa in the temporary holding facility.  Correa agreed to speak with investigators.  During the interview, Correa admitted to being at 1746 Clearview Street for her friend to perform sexual acts with the male in exchange for money.

16. SPD Investigators met with Dicarlo and she agreed to speak with investigators.  During the interview, Dicarlo admitted to being at the home of the victim to perform sexual acts in exchange for money.  Dicarlo stated a fight broke out inside the residence. During the fight, Dicarlo grabbed belongings of the victim and ran from the home.

17. Investigators met with the victim at Scranton Police Headquarters for a second interview. During the interview, the victim reported meeting a white female (DiCarlo) in the downtown of Scranton.  At this time, the female removed her breast from her shirt and asked for $10.00.  The victim stated it was at this time the two exchanged phone numbers for the purpose of meeting up in the future for sex.

18. The victim reported the two arranged to meet at his home once he dropped his wife off at work. Later in the day the victim and DiCarlo communicated via text message and arrangements were made for the victim to meet DiCarlo for sex. The victim told the female his address and told her the door would be open when she arrived.

19. The victim stated that later that day, DiCarlo announced herself at the door of the victim's residence. The victim stated DiCarlo was with another female described as a short black female. The victim stated initially everything was cordial and the three proceeded upstairs to his bedroom. The victim stated he made an arrangement with the DiCarlo for sexual acts of oral and vaginal sex for $100.00. The victim stated he spoke with the black female, and she told him she drove the female to the residence. The black female stated she was at the residence to make sure nothing bad happened to her friend.

20. The victim stated as he and DiCarlo were having sex, he noticed her reach towards his nightstand for money he had out in plain view. The victim stated when he attempted to stop DiCarlo from grabbing the cash, Correa began assaulting victim. The victim stated he was struggling with both women who were assaulting him. During

the fight, DiCarlo broke free and began grabbing items from his bedroom. DiCarlo then ran from the home screaming. The victim stated as he fought with the Correa, he was able to push her out to the hallway and down the stairs. During this time, two men entered the home and physically attacked him. He stated a black male, identified to law enforcement as Robert Barnes, punched him and knocked him into his stereo. Barnes then placed him in a choke hold and could be heard yelling he was going to "choke him out." The victim stated the white male (Small) was also involved in the fight. The victim stated he was struck over the head with an object from within his house. The victim suspected the object was a speaker from his stereo.

21. The victim stated he is currently missing approx. $400.00 in cash, a gold Cuban necklace, a gold Cuban wedding ring, his cell phone, keys to his BMW and a pair of women's Timberland boots.

22. A confidential human source (CS)[1] reported that Shaqare Blackwell, Dylan Small, and members of the Crips street gang sex

---

[1] The identity of the confidential human source is known to law enforcement, and information provided by the CS has been corroborated.

trafficked women throughout Pennsylvania, Massachusetts, Maine, and New Hampshire. The women would be physically assaulted if they did not comply with completing the tasks set by the Crips gang members.

23. According to the CS, Crips street gang members and the women utilized online dating websites to facilitate meeting men to perform sexual acts in exchange for money. The women would have intercourse with the victims, then inject them with a fentanyl "hot shot" that was provided to them by the Crips members, and steal valuables from the victim's residences. This happened on more than five (5) occasions. The women would take phones, money, and firearms from the victim's residences.

24. According to the CS, on March 23-24, 2024, a victim in West Pittston overdosed after receiving the fatal fentanyl injection from these women. On April 10, 2024, another death occurred in Hamburg, Pennsylvania regarding the same individuals and criminal activity. On April 14, 2024, another death occurred in Newport Township, Pennsylvania after the victim was given fentanyl during a sexual encounter with the women. These overdose deaths have been confirmed through the Pennsylvania State Police.

25. The CS indicated that the women used their cellular telephones to communicate with the gang members. The women also routinely took pictures of the male victims with their cellphones. It is unknown at this time the total number of men victimized by this group of Crips.

26. A "stash house" was identified at 36 Brunswick Ave 2nd Floor Apartment 2, Gardiner, Maine by the CS. The CS reported that Amanda Correa resides at 36 Brunswick Ave 2nd Floor Apartment 2, Gardiner, Maine. The CS reported that after the victim in West Pittston overdosed due to receiving the fatal fentanyl injection/ingestion, Amanda Correa transported an unknown number of firearms and other stolen items belonging to the overdose victim to 36 Brunswick Ave 2nd Floor Apartment 2, Gardiner, Maine. The CS also notified law enforcement of multiple stash houses in the Scranton, Pennsylvania area utilized by Crips gang members to store stolen items from robberies, firearms, and narcotics. The addresses in the Scranton area have not been identified at this time.

27. As indicated above, Christine Dicarlo, Amanda Correa, Dylan Small and Robert Barnes were arrested shortly after the home invasion

and assault occurring at 1746 Clearview Street, Scranton. After being processed everyone was lodged at the Lackawanna County Prison, where they remain. The personal belongs include clothing worn at the time of arrest, jewelry, cellular telephones, and other personal items were seized pursuant to a federal warrant issued in the Middle District of Pennsylvania.

## CONCLUSION

28. I believe, based upon the above, there is probable cause to believe that Christine Dicarlo, Amanda Correa, Dylan Small, and Shaqare Blackwell did knowingly and intentionally distribute fentanyl and agree with others to commit the following offenses against the United States: (a) 21 USC § 841(b)(1)(c) Drug Distribution Resulting in Death;  (b) violations of 18 USC § 2314 relating to Interstate Transportation of Stolen Property;  (c) violations of 18 USC §924(c) relating to Possession of a Firearm in Furtherance of a Drug or Violent Felony; and (d) violations of 18 USC §922(g) relating to Felon in Possession of Firearms. In inventorying the items seized from the federal search warrant, investigators noted what appeared to be blood stains on clothing belonging to Dylan Small.

29. I believe, based upon the above, there is further probable cause to believe that in the location listed in the search warrant application there may be found fruits, instrumentalities, and proceeds of the crimes referenced above, as particular described in Attachment "B" of the Search Warrant Applications.

30. I request delayed notice of this warrant and its accompanying documents, pending further Order of the Court and for a period of 30 days, and in support of this request I allege that such delayed notice is necessary to preserve the integrity of this on-going criminal investigation, protect the identity of potential witnesses and cooperators, and allow for the seizure of evidence vital to the investigation.

31. I believe having signed this application, under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information, and belief.

Matthew Phillips
Task Force Officer
FBI

Page **14** of **18**

Sworn to telephonically and signed
electronically in accordance with the
requirements of Rule 4.1 of the Federal Rules
of Criminal Procedure

Date: _____ Apr 25 2024 _____

City and state: _____ Bangor, ME _____

_____
*Judge's signature*

John C Nivison U.S. Magistrate Judge
*Printed name and title*